**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JUVON WILSON,** | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. [_____]** |
| | § | **Jury Demanded** |
| **LIFE CARE CENTERS OF** | § | |
| **AMERICA, INC d/b/a GARDEN** | § | |
| **TERRACE ALZHEIMER'S** | § | |
| **CENTERS OF EXCELLENCE,** | § | |
| **Defendant.** | § | |

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

JUVON WILSON (Plaintiff) files this original complaint against LIFE CARE CENTERS OF AMERICA, INC. d/b/a/ GARDEN TERRACE ALZHEIMER'S CENTERS OF EXCELLENCE ("Garden Terrace" or "Defendant") and for cause of action would show the following:

### I.
### PARTIES

1.      Plaintiff, JUVON WILSON, is an individual who resides in Fort Bend County, Texas.

2.      Defendant, Life Care Centers of America ("Life Care"), is a foreign corporation, authorized to do business in the State of Texas as Garden Terrace Alzheimer's Center of Excellence ("Garden Terrace").  Defendant may be served with notice of this suit by serving its registered agent Corporation Service Company at 211 E. 7th Street, Suite 620, Austin, TX 78701.

3.      At all times relevant hereto, Plaintiff was employed at the Garden Terrace center located at 7887 Cambridge St., Houston, TX 77054.

1

4.     At all times relevant hereto, Garden Terrace was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of Garden Terrace.

## II.
## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this case because the main cause of action  arises under a federal question as hereinafter more fully appears pursuant to 28 U.S.C. §§ 1331.  Further, this Court has supplemental jurisdiction over Plaintiff's second cause of action pursuant to 28 U.S.C. § 1367 (a).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and it is the district in which the Defendants' business is located and operated.

## III.
## FACTS

7.     Garden Terrace operates long-term care nursing centers that provide care for the elderly.  Garden Terrace is an employer within the meaning of the FMLA.

8.     Ms. Wilson was an employee within the meaning of the FMLA, in that she had worked for Garden Terrace for more than one year on a full time basis.

9.     Under the FMLA, Ms. Wilson was entitled to 12 weeks of leave per year for any of the reasons specified in the FMLA. Those reasons include "Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Leave may be taken intermittently or on a reduced leave basis. *Id*. § 2612(b)(1).

10.     Further, under the FMLA, Garden Terrace was required to provide Ms. Wilson notice of her FMLA rights within five business days of the date Ms. Wilson requested leave or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason. 29 CFR 825.300 (b)(1).

11.     Plaintiff began employment with Garden Terrace on March 21, 2000, and was terminated from employment on January 8, 2013.  She held the position of RTA restorative activities assistant.

12.     On November 16, 2012, Ms. Wilson was assisting a co-worker with a patient when her foot got caught between a hoya lift strap and a foot pedal and she free fell onto her back on the concrete floor ("Incident 1").

13.     Plaintiff was severely injured but was discouraged from going to the on-site clinic to seek medical attention for her injuries.  Plaintiff was immediately told she was "ok" and did "not need to file for workers' comp."

14.     Plaintiff insisted on seeing doctor and was diagnosed with a lumbar strain, cervical strain, scapular contusion, shoulder strain, and foot sprain.  The doctor noted Plaintiff had a spasm and tenderness of the L-spine and tenderness of the foot and shoulders.

15.     Plaintiff was prescribed physical therapy.  She was allowed to return to work on light duty with restrictions.

16.     While Ms. Wilson was on light duty, her superiors did everything to make her situation worse.  The prescribed light duty restrictions were not followed.  She experienced constant pain as she tried to comply with her supervisors' directions in an effort to keep her job. She was given duties outside the scope of her restrictions including tasks that required her to remain on her feet for extended periods of time, continuously bend over and reach over her

3

shoulder, and constantly lift heavy objects.

17.     When she complained about the lack of concern for her restrictions and questioned why the doctor's orders were not being followed, she was rebuffed and told she needed to "stay home then."

18.     When Plaintiff questioned the lack of paperwork involved with her worker's compensation claim received comments such as "you won't get as much money as your regular pay." Ms. Wilson was even told "you can drive a car you can't be that hurt." Garden Terrace management had co-workers call Ms. Wilson in an effort to get "evidence" that she was "lying" and was not injured at all.

19.     Ms. Wilson requested numerous meetings to discuss her restrictions and how her assignments were causing her additional pain. She stated numerous times that if her restrictions could not be followed she would rather take off without pay so that she could focus on her therapy and getting better. She requested leave pursuant to the FMLA. At no time did Garden Terrace offer or provide any information relative to Ms. Wilson's rights under the FMLA, individually, or in conjunction with her workers' compensation claim. She was simply told that her Concentra doctor would not sign off on it.

20.     Finally, on December 19, 2013, Rachel Unverzagt (Executive Director) agreed to meet with Ms. Wilson but only with Dana Green (Supervisor) present. During this meeting, Ms. Unverzagt and Ms. Green made it known that they did not believe Ms. Wilson's injuries were serious, nor that she was experiencing any pain.

21.     Ms. Green and Ms. Unverzagt attempted to force Ms. Wilson to sign a document relinquishing her right to sue Garden Terrace if she accepted a light duty assignment (one month after she had allegedly already been on light duty). Ms. Wilson informed Ms. Green and Ms.

Unverzagt that she was not comfortable signing the document without proper advice and counsel because it appeared she would be "giving up [her] rights."

22.     Throughout the meeting Ms. Wilson continuously notified Green and Unverzagt that she was in pain.   They continued to pressure Ms. Wilson about signing the document. Finally, when Wilson would not budge, Green and Unverzagt left the room.   Upon their leaving, Ms. Wilson collapsed ("Incident 2").

23.     Ms. Wilson was taken to the hospital in an ambulance.   The pain she was experiencing and stress of the meeting had caused Ms. Wilson's blood pressure to spike to stroke level.   She remained under observation and had a battery of tests ran over the next two days.   Ms. Wilson received multiple phone calls from her supervisor and others on December 19, 2013.   No one was concerned for Ms. Wilson's health, only when she could return to work.   Ms. Wilson's daughter kept Garden Terrace updated on her health, but the doctor had not indicated at that time when Ms. Wilson would be released from the hospital or when she could return to work.

24.     Ms. Wilson received a message from Ms. Smith on December 20, 2012, informing her that she could not come back to work at Garden Terrace until she received a release from Concentra and the treating physician at the hospital.   Ms. Wilson spoke with Ms. Green on December 21, 2012, to convey that she did not know when she would be able to return to work as she had still not been given a release date and she was still in the hospital.   Over the next few days Ms. Wilson found out that her health insurance had been cancelled.

25.     On December 28, 2012, Ms. Wilson spoke with Melissa Spencer regarding her insurance cancellation and paperwork for leave pursuant to the FMLA.   Ms. Wilson received FMLA paperwork on January 3, 2013.   She was given a deadline of January 15, 2013, to return

the completed paperwork.

26.     On January 8, 2013, Ms. Wilson was called to attend a meeting at the office. Upon her arrival, she was informed that she was terminated allegedly for insubordination.

27.     Defendant's termination of Ms. Wilson on January 8, 2013 was a consequence of, in retaliation for, and in direct interference with Ms. Wilson exercising her rights under the Texas Workers' Compensation Act and the Family Medical Leave Act.

## IV.
## CAUSES OF ACTION

**A.     Violations under the FMLA**

28.     Plaintiff reasserts and incorporates by reference all of the facts set forth in the above numbered paragraphs.

29.     Garden Terrace Violated Ms. Wilson's rights under the FMLA by interfering with, restraining, and/or denying her the exercise of or the attempt to exercise her rights under the FMLA.  It is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA. 29 U.S.C.A. § 2615(a)(1).

30.     Once Garden Terrace knew that Ms. Wilson was under the continuous care of a doctor and her injury was impairing her ability to do her job, Garden Terrace was required to provide a notice to Ms. Wilson regarding her FMLA rights. 29 C.F.R. § 825.301(a).  Ms. Wilson did not need to expressly invoke rights under the FMLA, or even to refer to the FMLA, in order to trigger that requirement. Id. § 825.301(b).

31.     Had Ms. Wilson been advised by Garden Terrace of her FMLA rights and her injury (Incident 1) designated as FMLA qualifying, Wilson would have been able to take protected leave when she was unable to work and, therefore, perform her job duties when she was more fully covered.

32.     Further, the FMLA requires employers to restore employees to the same position or a position comparable to that held by the employee after a qualifying absence.  Failure to do so is a violation of the FMLA.  29 U.S.C.A. § 2614(a)(1).

33.     Ms. Wilson was terminated on January 8, 2013, even though her employer was aware that she was on protected leave (Incident 2).

34.     The FMLA provides that an employer who violates the FMLA shall be liable, without limitation, for the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation ("Lost Wages and Benefits"), interest on the lost wages and benefits, and liquidated damages equal to the sum of the lost wages and benefits and corresponding interest.  29 U.S.C.A. § 2617 (a).

35.     Ms. Wilson has been damaged by the company's violation of the FMLA for which amounts and conduct Wilson hereby sues.

**B.     Violations under Texas Workers' Compensation Act**

36.     Plaintiff reasserts and incorporates by reference all of the facts set forth in the above numbered paragraphs.

37.     The Defendant, through its agents, servants and employees, discharged or in some other manner discriminated against the Plaintiff because the Plaintiff in good faith, filed a claim,

hired an attorney to represent him in a claim, or caused to be instituted, a workers' compensation claim under the Texas Workers' Compensation Act.  The defendant's conduct was and is a violation of Texas Labor Code § 451.001, and as a result of this violation, the Plaintiff has suffered damages as alleged in this petition.

38.     An implied term of the employment agreement between the Plaintiff and Defendant was the agreement that the Plaintiff would be entitled to receive workers' compensation benefits for injuries suffered in the course of her employment.  The Defendant, its agents, servants, and employees breached this term of the employment agreement by taking the actions described in this petition, which discourages employees such as the Plaintiff from exercising their legal right to workers' compensation benefits.  This conduct violates the public policy of this state and is a breach of employment agreement between the Plaintiff and the Defendant.  As a result of this breach of contract and public policy violation, plaintiff has incurred the damages alleged in this petition.

39.     Garden Terrace management never believed the injuries Ms. Wilson sustained in November 2012 warranted a workers' compensation claim, even when faced with irrefutable medical proof.  They did everything to discourage her from making the claim.

40.     Once Ms. Wilson filed the workers' compensation claim she endured horrible retaliation by Garden Terrace management that served to discourage Ms. Wilson and others from exercising their rights to workers' compensation benefits.  Ms. Wilson was mocked and ridiculed by management and was constantly questioned by co-workers who had been told to "find out" about Ms. Wilson's injuries and report back to management (in an attempt to prove Ms. Wilson was lying).  Most importantly, Garden Terrace refused to follow the prescribed restrictions for light duty work for Ms. Wilson, thereby exacerbating her injuries.

41.     Further, as a direct and proximate result of Defendant's willful, knowing and intentional harassment of and retaliation against her, Plaintiff has suffered and will continue to suffer loss of wages, pain and suffering, and extreme and severe mental anguish and emotional distress.

42.     The above-described acts on Defendant's part were undertaken in violation of the Texas Labor Code § 451.001 and proximately caused Plaintiff substantial injuries and damages.

43.     The actions of the Defendant demonstrate a conscious disregard of the rights of its employees, and the rights of the Plaintiff in particular, to obtain the workers' compensation benefits that are provided under the Texas Workers' Compensation Act, for which the Defendant is liable to the Plaintiff for exemplary damages in an amount to be determined by the trier of fact. Plaintiff is also entitled to reinstatement to her former position, back pay, front pay, punitive damages, compensatory damages, and emotional distress.

44.     Additionally, as a result of Defendants' above-referenced actions and/or omissions, Plaintiff was required to retain counsel.  Accordingly, Plaintiff is entitled to and seeks compensation for attorney's fees, as well as out-of-pocket expenses and costs of Court she will have incurred in this action.

## V.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, JUVON WILSON, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

**Williams Refuge & Mickey, PLLC**


  /s/ Kamisha M. Mickey
Kamisha M. Mickey
Attorney-in-Charge
Texas Bar No. 24074712
Southern District Bar No: 1475217
5151 Katy Fwy
Suite 205
Houston, Texas 77007
(713) 360-7719  (main)
(832) 369-0063  (fax)

**ATTORNEY FOR PLAINTIFF
JUVON WILSON**